CITATION, In re. v. PRUITT, d. b. a. PRUITT TRUCKING COMPANY.

Public Utilities Commission.

No. 27829. Decided November 5, 1958.

William B. Saxbe, Atty. Genl., By James F. DeLeone, Asst. Atty. Genl., for the Public Utilities Commission of Ohio.

Roy Lambert, Toledo, for the Citee.

Herbert F. Baker, Columbus, for Ohio Movers and Warehousemen's Association, Incorporated.

### FINDING AND ORDER

The Commission coming now to consider the above-entitled Citation; its Orders and Entries previously issued in connection therewith; the testimony adduced at the public hearing held on July 14, 1958; the written Report of its Attorney Examiner, James L. Fullin; and, being otherwise fully advised in the premises, and in compliance with §4903.09 R. C., hereby renders its Finding and Opinion:

RESUME OF THE RECORD:

The Commission hereby adopts as its own as if fully rewritten herein the "Nature of This Proceeding" and the "Summary of the Testimony" as the same are contained in the Examiner's written Report.

COMMISSION DISCUSSION:

The Commission hereby adopts as its own as if fully rewritten herein the "Examiner's Discussion" as the same is contained in the written Report and hereby reiterates that Discussion as follows:

252

"(1) Approximately three years ago this Citee filed an Application for a Certificate of Public Convenience and Necessity to transport household goods from and to Findlay, Ohio and the Findlay area. The Application was denied;

"(2) Approximately three years ago the Citee, Pruitt, without benefit of counsel, and after examining several lease contracts of other carriers, designed the mimeographed lease here under consideration for general use in an attempt to make transportation movements, legally, outside the exempt area in the city of Findlay;

"(3) The Citee prepared a supply of mimeographed copies of such lease so that whenever he was called upon or requested to perform transportation service, which would normally have required the services of a certified carrier, instead of refusing such business, or referring it to an authorized carrier, the Citee persuaded his would-be customer to sign a lease whereby the customer agreed temporarily and for a single trip to lease Pruitt's van equipment;

"(4) In the event the lessee was unable to supply his own workers to make the transportation movement in the equipment which he had just 'leased' (and usually this was the fact), Pruitt then suggested that the lessee temporarily hire several of Pruitt's employees in order to effectuate the movement.

"It appears to the Examiner that the fact pattern herein outlined represents an almost too pat attempt to place this situation within what the Citee apparently considers to be the holding of the Ohio Supreme Court in **Van Meter v. P. U. C. O., 165 Oh St 391.** In that case, the Court stated that any responsible shipper which had a temporary need to supplement its motor vehicle equipment is entitled, by virtue of the right of private contract, to hire such equipment and to employ drivers and workers to man it. The situation here under consideration appears to involve a misguided attempt by this Citee to employ the holding in that case as a substitute for the authority he once sought and failed to get. There is nothing basically or legally wrong with the equipment lease, as such. It might be indicated that such leases are quite general in their terms, do not contain a specific termination date, and are, without doubt, fraught with future legal controversy as to such matters as liability; but these considerations are beyond the scope of this inquiry. Our investigation, however, does not stop with the validity of the equipment lease. Pruitt goes well beyond the mere supplying of equipment at the request of a person needing transportation. The Citee invariably follows a course of conduct whereby he puts at the disposal of his would-be customer not only his equipment, under the temporary lease arrangement, but also the Citee undertakes to supply such lessee competent and experienced drivers whom the lessee may 'employ' for the specific purpose of avoiding regulation. Pruitt is actually supplying more than equipment. Equipment rental companies daily perform this function validly. In addition to equipment, the Citee supplies transportation 'know-how.' In short, he is supplying 'transportation service for hire' within the meaning of §4921.02 **Sub Paragraph (A) R. C.** To this extent his activity is regulated. He is supplying his own employees to render the transportation movement. More than that, one

of his more experienced employees almost invariably supervises the actual loading and transportation process. Were he to limit himself solely to the supplying of equipment, the Commission could not, of course, criticize his conduct. This is not the situation in which a responsible shipper needs to augment his own transportation equipment. It is rather a situation in which an individual, a householder, needs **transportation service,** which he secures as a 'package' from the Pruitt Company.

"The General Assembly long ago devised a system for regulating transportation for hire by motor vehicle. It has enacted a generic statute which requires those who would engage in the transportation of property for hire outside the confines of cities or municipalities to secure certificate authority from the Public Utilities Commission to do so. That statute further requires all persons who do secure such authority to submit themselves to regulation in all of its various and even onerous details. Such carriers must file requisite insurance, in order adequately to safeguard the cargo which they transport, as well as to save harmless the traveling public against any damage which might occur during the course of such transportation. Such carriers are further required to comply with certain safety requirements which this Commission from time to time imposes upon them. Such carriers must pay Motor Carrier Taxes in order to support the entire system of motor Carrier regulation and, in addition, to help defray the expense attendant to the maintenance of the Ohio Highway System. It is small wonder then that a trucker such as this Citee, encumbered by none of these obligations, was able to transport property for the Coca-Cola Company at rates substantially below those of a regulated carrier.

"The Legislature has gone further and has provided that once such authority is awarded to a carrier, it shall be protected to the extent that no unwarranted competition shall be imposed upon such carriers. Thus, so long as such carriers maintain an adequate service, no new carrier may be authorized in the area. This Citee once sought to become a regulated carrier. This Commission found that the service of carriers transporting household goods and other commodities in the Findlay area was satisfactory so that no further service was required. It denied a certificate to Earl Pruitt. The Citee at that time failed to appeal or otherwise to challenge the legality of such finding. It would make a hollow mockery of this entire system of motor carrier regulation, were this Citee now to be allowed to employ this simple and obvious scheme to avoid the harsh reality of regulation and to defeat the spirit of the law and to wreck the existing motor carrier industry. If the system devised by this Citee is valid, there would seem to exist little cause or reason for any carrier to submit itself to regulation. Why indeed should a carrier meet all of the exacting and difficult requirements of the regulatory statute, when by the simple mimeographing of a lease form, such as that designed by Pruitt, it could relieve itself of all such regulatory responsibility. If this ruse were to be validated, all the evils attendant to unregulated competition in the trucking industry with its concomitant multiplication of motor carrier equipment on Ohio highways; which the Legislature by the enactment of the Motor Carrier

Act sought to prevent could, over night, come to pass. If the Citee's scheme is proper and any person owning a truck may operate anywhere merely by mimeographing lease forms, it will not be long until transportation service generally will deteriorate to the point that the whole shipping public of Ohio would be adversely and detrimentally affected.

"The pertinent and applicable provision of Ohio statute (§4921.02 **Sub Paragraph [A] R. C.**), reads as follows:

" '(A person, firm or corporation is a 'motor transportation company' subject to regulation by this Commission insofar as it is) engaged in the business of transporting persons or property **or the business of providing or furnishing such transportation service, for hire, whether directly or indirectly or by lease or other arrangement, for the public** in general, in motor propelled vehicles . . .' "

In addition to the Examiner's Discussion adopted and set forth above, the Commission deems it appropriate, at this time, to emphasize that its decision herein is based, to a substantial degree, upon its firm conviction that the continued existence of an operation of the type being conducted by this Citee could not fail to have a resultant serious and deleterious effect upon the shipping public in Ohio and upon the type and character of transportation service they are receiving. The Commission would be more than remiss in its statutorily imposed duty to:

". . . develop and preserve a highway transportation system properly adapted to the needs of commerce in the state" (§4921.03 **(D) R. C.**). were it to encourage or even tolerate by its silence or inaction the avoidance of motor carrier regulation in a manner here followed by this Citee. This is especially true when, as here, the device of avoidance so clearly and overtly saps the strength and very lifeblood of Ohio's common carrier industry, rendering that industry gradually less able to meet the transportation needs of Ohio shippers. The ultimate and adverse impact of such device upon the Ohio shipping public is too obvious to require further delineation here. It is sufficient to observe that the Ohio General Assembly has, by the enactment of the Motor Carrier Act, provided for an orderly way in which the common carrier transportation system is to be supplemented in the event it becomes unable to render adequate service in a given area in this state. This is, of course, by way of application for new authority in accordance with the provisions of §4921.09 et seq, R. C. Having failed in an attempt to follow that procedure, this Citee must not be allowed to substitute, in lieu of the entire system of motor carrier regulation, his own device of avoidance, especially when that device is fraught with the adverse consequences for the entire Ohio highway transportation system herein outlined.

ULTIMATE FINDINGS:

The Commission hereby adopts as its own as if fully rewritten herein the "Ultimate Findings" as the same are contained in the Examiner's written Report and hereby reiterates the following Findings:

"(1) The Commission has jurisdiction hereunder and under the provisions of §4921.10 **R. C.**;

"(2) The method of operation followed by Citee and outlined in the Discussion, above, where the Citee undertakes to lease its van equipment to individuals, who, often at the suggestion of the Citee, then 'employ' the regular employees of the Citee to complete the transportation, is illegal in that it constitutes the rendition of a transporation service for hire;

"(3) Citee should be ordered to cease and desist from the operations herein outlined."

ORDER

It is, therefore,

ORDERED, That, in accordance with the Discussion and Findings set forth above, the written Report of the Attorney Examiner is hereby adopted and the said Citee, Earl F. Pruitt and Ray H. Pruit, d. b. a. Pruitt Trucking Company, 421 Midland Avenue, Findlay, Ohio, is hereby ordered to cease and desist all those motor transportation operations outlined in this Order and herein found to be invalid and improper. It is, further

ORDERED, That a properly certificated copy of this Order be forthwith served by certified mail upon the said Citee in order properly to inform him of its terms and conditions.

THE PUBLIC UTILITIES COMMISSION OF OHIO

Entered in Journal
November 5, 1958
A true Copy:
W. E. Herron, Secretary

Everett H. Krueger, Jr., Chairman
Ralph A. Winter
Edward J. Kenealy
Commissioners